UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERALD LAKE, ET AL.,

Plaintiffs,

v. Case No. 8:06-cv-1462-T-24 TBM

TENNECO, INC., a Delaware corporation,

Defendant.
_________________________________/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 37). Plaintiffs oppose the motion.

**I. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## **II. Background**

Plaintiffs are the surviving parents and siblings of Jenna Lake. They have sued Defendant Tenneco, Inc., the manufacturer of the Thrush/Dynomax muffler at issue in this case, under theories of strict liability and negligence for its failure to provide adequate instructions and to warn consumers about the risk of death from carbon monoxide poisoning.

At the time of the incident in October of 2005, Lake was dating Jason Epps. Both Lake and Epps were recent high school graduates.

Epps drove a 1994 Chrysler minivan. He wanted the minivan to have a louder sound, so he decided to replace the minivan's muffler to increase the sound. (Boyle depo[1], p. 24). Epps went to Advance Auto Parts and bought a Thrush/Dynomax muffler. (Boyle depo, p. 26, 33).

The Thrush/Dynomax muffler did not come with any instructions, nor did it contain any warnings. Additionally, there was no recommendation that a professional should install the muffler or inspect the muffler after installation. Epps' friend, Mike Boyle, Jr., helped Epps install the muffler. (Boyle depo, p. 44).

The exhaust pipe on the prior muffler on the minivan was positioned so that it was coming out of the back of the minivan. (Boyle depo, p. 38). After Epps and Boyle installed the Thrush/Dynomax muffler on the minivan, Epps bought an eighteen inch flex pipe and put it on the muffler.[2] (Boyle depo, p. 44). Boyle helped Epps to install the flex pipe, and it was positioned so that it turned out towards the side of the minivan. (Boyle depo, p. 48). However, the flex pipe did not extend out of the side of the minivan; instead, it was still under the minivan

---

[1]Doc. No. 46

[2]An exhaust pipe was not provided with the muffler.

near the sliding door on the side of the minivan. (Boyle depo, p. 50, 51, 78).

Sometime after 11:00 p.m. on October 21, 2005, Lake and Epps met up and ended up in the minivan in the parking lot of an apartment complex. The next morning, employees at the apartment complex noticed that Epps' minivan had been parked in the same spot and running for a long period of time. The windows of the minivan had been covered by bed sheets. (Doc. No. 37, Ex. A). The police were called, and Epps and Lake were found dead, lying on a mattress in the back of the minivan. (Doc. No. 37, Ex. A).

During the investigation of the incident, a sheriff's deputy examined the minivan and noticed a rust hole in the side sliding door of the minivan, near the bottom rear corner of the door. (Doc. No. 37, Ex. A). The deputy noticed that the exhaust outlet was positioned just under the rust hole in the door, and he observed what appeared to be exhaust fumes surrounding the rust hole.[3] (Doc. No. 37, Ex. A). An autopsy of Lake and Epps was conducted, and the cause of death for both of them was carbon monoxide poisoning. (Doc. No. 37, Ex. A).

## III. Motion for Summary Judgment

Defendant moves for summary judgment on Plaintiffs' strict liability and negligence claims. Specifically, Defendant argues that it did not have a duty to warn of the risk of carbon monoxide poisoning, because the danger posed by inhalation of carbon monoxide from a car's exhaust system is common knowledge, and thus, is an open and obvious danger. The Court agrees.

Under the theory of strict products liability, a product may be defective due to an inadequate warning. See Ferayorni v. Hyundai Motor Co., 711 So. 2d 1167, 1170 (Fla. 4th DCA

---

[3]Epps' grandmother, who was the owner of the minivan, disposed of the minivan prior to the commencement of this litigation.

1998)(citations omitted). Florida has adopted the doctrine of strict liability as stated by the Restatement (Second) of Torts § 402A. See West v. Caterpillar Tractor Co., Inc., 336 So. 2d 80, 87 (Fla. 1976).

Section 402A provides that in order for the doctrine of strict liability to apply, the product must be "in a defective condition unreasonably dangerous to the user." Comment i to § 402A further explains what is meant by the phrase "unreasonably dangerous." In order for a product to be considered "unreasonably dangerous" under § 402A, the product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A, cmt. i. Furthermore, comment j to § 402A provides that "a seller is not required to warn with respect to products . . . when the danger, or potentiality of danger, is generally known and recognized." Restatement (Second) of Torts § 402A, cmt. j; see also Pinchinat v. Graco Children's Products, Inc., 390 F. Supp.2d 1141, 1146 (M.D. Fla. 2005)(stating that there is no duty to warn if the danger is obvious or known)(citation omitted); Thursby v. Reynolds Metals Co., 466 So. 2d 245, 251 (Fla. 1st DCA 1985)(stating that there is a duty to warn when the hazards associated with the product are not obvious or reasonably apparent).

With respect to a negligent failure to warn claim, "[a] duty to warn arises where a product is inherently dangerous or has dangerous propensities." Cohen v. General Motors Corp., Cadillac Div., 427 So. 2d 389, 390 (Fla. 4th DCA)(citation omitted). "However, there is no duty to warn of an obvious danger." Id. at 391; see also Siemens Energy & Automation, Inc. v. Medina, 719 So. 2d 312, 314 (Fla. 3d DCA 1998)(citations omitted).

Thus, while Plaintiffs have asserted claims for failure to warn under strict liability and negligence,[4] Defendant is not liable for its failure to provide adequate instructions and to warn consumers about the risk of death from carbon monoxide poisoning if such risk was open and obvious. The obviousness of danger is determined by an objective, reasonable person standard and may be determined as a matter of law in some cases. See Marzullo v. Crosman Corp., 289 F. Supp.2d 1337, 1345-46 (M.D. Fla. 2003)(citations omitted); Martin v. JLG Indus., Inc., 2007 WL 2320593, at *4 (M.D. Fla. Aug. 10, 2007)(citation omitted). As explained below, the Court finds that under the facts of this case, the risk of death by carbon monoxide poisoning was common knowledge, and thus open and obvious.

It is common knowledge that carbon monoxide is an odorless and colorless gas and that inhalation of carbon monoxide in an enclosed space can lead to death. See, e.g., Hanlon v. Lane, 648 N.E.2d 26, 30 (Ohio Ct. App. 1994)(stating that it is common knowledge that carbon monoxide is a toxic, potentially lethal, odorless and colorless gas); Schiro v. American Med. Servs., 719 So. 2d 597, 600 (La. App. 1998)(stating that it is common knowledge that carbon monoxide is poisonous); Beans v. Entex, 744 S.W.2d 323, 325 (Tx. Ct. App. 1988)(stating that asphyxiation due to carbon monoxide inhalation in an unventilated area is an open and obvious danger) . Furthermore, it is common knowledge that a car's exhaust system, which includes the muffler, expels carbon monoxide. See, e.g., Schiro, 719 So. 2d at 600 (stating that it is common knowledge that a vehicle's exhaust pipes emit carbon monoxide). Finally, it is common

---

[4]"The difference between negligent failure to warn and failure to warn under a strict liability theory is that a prima facie case of strict liability failure to warn does not require a showing of negligence. At the same time, however, strict liability does not make the manufacturer or seller an insurer." Marzullo v. Crosman Corp., 289 F. Supp.2d 1337, 1347 (M.D. Fla. 2003)(quoting Ferayorni, 711 So. 2d at 1172)(internal quotation marks and citations omitted).

knowledge that if a car's exhaust pipe is positioned in a manner that allows carbon monoxide to enter into a car that has all of its windows closed (thus creating an enclosed space for the passengers), there is a risk that the passengers will die from carbon monoxide poisoning.[5] See id. (stating that it is common knowledge that running vehicle engines in an enclosed space is dangerous).

The Court notes that Plaintiffs have submitted an expert opinion in support of their contention that the danger of carbon monoxide poisoning was not open and obvious. Plaintiffs' expert opined that "the danger of lethal carbon monoxide poisoning outdoors (as opposed to inside an enclosed space) is not so generally appreciated or understood that warnings regarding this danger was not necessary." (Doc. No. 46, Ex. 2, ¶ 10). This opinion does not conflict with the Court's conclusion that under the facts of this case, the risk of carbon monoxide poisoning was open and obvious. This is because the danger at issue in this case was not simply carbon monoxide poisoning occurring outdoors; instead, it was carbon monoxide poisoning due to carbon monoxide seeping into an enclosed space (i.e., the passenger compartment of the minivan). The fact that the minivan was parked outside, rather than in an enclosed space, does not change the fact that carbon monoxide seeped inside the enclosed passenger compartment of the minivan.

Plaintiffs' expert has also opined that "the dangers of carbon monoxide poisoning are not generally appreciated by the consuming public," and "the dangers of carbon monoxide poison are not open and obvious, especially under circumstances such as those in the instant case."

---

[5]The fact that all of this is general, common knowledge is evidenced by the fact that many people attempt to commit suicide in their cars by either leaving their car running in their garage with the garage door closed or by connecting a hose to their exhaust pipe and running it into the window of an otherwise enclosed car to allow the carbon monoxide to seep in.

(Doc. No. 46, Ex. 2, ¶ 12, 14). These opinions are not the type contemplated by Federal Rule of Evidence 702.

Pursuant to Rule 702, expert testimony is permitted only if the testimony based on "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue.' F.R.E. 702. The 1972 Advisory Committee Notes to Rule 702 provide: "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." (internal quotation marks and citation omitted).

The expert's opinions quoted above cannot assist the trier of fact in determining whether the risk of death from carbon monoxide poisoning due to carbon monoxide seeping into an enclosed car is common knowledge, because a jury is competent to make that determination on their own. See, e.g, Hibiscus Assocs., Ltd. v. Bd. of Trustees of the Policemen & Fireman Ret. Sys. of the City of Detroit, 50 F.3d 908, 917 (11th Cir. 1995)(stating that "[e]xpert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves")(citations omitted); Evans v. Mathis Funeral Home, Inc., 996 F.2d 266, 268 (11th Cir. 1993)(finding that exclusion of expert testimony–based on the district court's conclusion that it was not necessary in order to help the jury determine whether the condition of the steps was a factor in causing the plaintiff to slip and fall, because the effect of the condition of the steps was within the common knowledge of the

jury–was not clearly erroneous); Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705, 708 (2d Cir. 1989)(finding that the jury did not need expert testimony to help them decide whether a railroad platform was safe when it had ice on it and was dimly lit); Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986)(stating that expert testimony in the slip and fall case regarding whether a higher section of a curb hid the further section of the curb from a person's view was unnecessary, because the jury had an opportunity to view the curb); Cohen v. Western Hotels, Inc., 276 F.2d 26, 27 (9th Cir. 1960)(finding that it was not an abuse of discretion for the trial court to exclude the expert's testimony in a slip and fall case–regarding the proper manner of laying rugs and whether the wrinkled condition of the rug contributed to the plaintiff's fall–because ordinary experience made the jury competent to determine these matters on their own); Abramson v. Walt Disney Co., 370 F. Supp.2d 1221, 1225 (M.D. Fla. 2005)(finding that expert testimony regarding whether the positioning of the baseplate supporting the railing was not necessary, and also noting that other courts have found expert testimony regarding open and obvious conditions commonly known and observable to be unnecessary); Witty v. HMD Int'l S.A., 2002 WL 31939077, at *1 (C.D. Cal. July 30, 2002)(stating that expert testimony regarding whether the presence of grease on the floor is an open and obvious danger was unnecessary). Since no reasonable jury could find that the danger of death from carbon monoxide poisoning due to carbon monoxide seeping into an enclosed car is not common knowledge, and hence there is no duty to warn of such a danger, summary judgment on Plaintiff's claims is appropriate.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 37) is **GRANTED**;

(2) Defendant's Motion to Partially Strike the Affidavit of Edward Karnes (Doc. No. 47) is **DENIED AS MOOT**;

(3) Defendant's Motion for Leave to File a Reply regarding its motion to strike (Doc. No. 52) is **DENIED AS MOOT**;

(4) The Court terminates the remaining pending motions (Doc. No. 54, 55, 57); and

(5) The Clerk is directed to enter judgment in favor of Defendant and to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 17th day of December, 2007.

Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record